Read, Judge.
This bill seeks to review a decree of the Supreme Court of Hamilton county, charging Mitchell, as trustee of all the property and effects which he received from one George H. Young, for the benefit of Young’s creditors, under the act of 1838.
*Gazzam and Butler filed a bill in behalf of themselves and other creditors of the late George H. Young, charging that they had recovered judgments against G. H. Hill, administrator of Young, at the January term, 1839, of the Superior Court of Cincinnati, and, also, that Adams and Shaw had recovered judgments against the ad- . ministrator of said Young.
*335 That Young, shortly before his death, in contemplation of insolvency, and with a design to prefer some creditors over others, and-especially Mitchell, had, in various forms and in different ways,, assigned and transferred all his property, of every description, to Mitchell. The bill prayed that Mitchell should be compelled to-account for all such property, and that its proceeds should be distributed amongst all the creditors of Young, as the statute directs.
The court decreed Mitchell to account, and that distribution should, be made amongst the creditors in pursuance of the statute.
The errors assigned, are in substance—
First: That certain real estate was included in the decree, for which-Mitchell should not account.
Second : That there was a transfer of merchandise to the amount of $6,807.90, made in payment of a debt due from Young to Mitchell,, which should not have been included.
Third: That there was certain merchandise received by Mitchell after the death of Young, which was replevied by Alter, Taylor and Dewey. That Mitchell never received any part thereof, and was not,, therefore, bound to account.
Fourth : That Mitchell should not have been compelled to account for an assignment of notes, book accounts, etc,, because this assignment was not made in view of insolvency.
Fifth: That there is no proof of actual fraud, and, therefore,. Mitchell should not be held to account, etc.
These are all errors founded in fact, and we feel compelled toaeknowledge the impropriety of the practice in this state of converting bills of review into mere rehearings. Bills of review should be confined to the correction of errors in law, apparent upon the face of the record, except in eases of leave, *upon newly discovered [335-testimony. But even under our objectionable practice, which can only be tolerated because of many years continuance, we should feel ourselves disinclined, except in clear cases, to disturb decrees resting upon-, facts which have once been found.
The object of the act of 1838, under which this bill is filed, amendatory' of the act directing the mode of proceeding in chancery, was to cut off all preferences, by debtors in failing or insolvent circumstances, of favored creditors, and to secure a fair distribution to all the creditors in proportion to their respective demands.
Fquity delights in equality, and the courts will construe this act-most liberally, to accomplish its object. True, it does not prevent a *336 debtor from making actual payment by an absolute transfer of property in payment. But if, in contemplation of insolvency, and with a design to prefer one creditor over another, the debtor assign his property to such creditor, or any other person, in trust, to satisfy the debt of such creditor designed to be preferred, and to account for the application of the property so transferred, or the residue after the payment of such debt, it matters not what may have been the manner or form of such transfer, the court would look to the substance of the thing done, and hold such- creditor, or other person receiving such transfer, a trustee for all the creditors. The court will not require fraud to be proven against the assignee. A mere design on the part of the debtor, in contemplation of insolvency, will bring such assignment within the statute. The statute will not permit a debtor in failing circumstances, in contemplation of insolvency, to interpose between himself and his creditors a trustee to secure a preference to some creditors over others. The situation of the debtor making the assignment, and the design with which he made it, must be gathered from all the circumstances of the case. It is the motive, design, and situation of the assignor, and not the motives of the assignee, that give character to the assignment, and bring it within the operation of the statute.
*Counsel have labored [to define] the meaning of the term insolvency. In the mercantile sense, it means a person unable to pay his debts according to the ordinary usages of trade. But in the broad •sense used by the statute, it means a person whose affairs have become so deranged that he is unable to pay his debts as they fall due; and if, from such a deranged state of his affairs, and the sense of inability to meet his moneyed engagements, he should transfer his property to a trustee to pay his debts, we should regard such assignment as made in contemplation of insolvency, and within the meaning of the statute.
It is contended that the person making the assignment must believe that his property, at the time he makes the assignment, is not sufficient to meet his debts. To permit a person, who is unable to meet his debts, who owes large amounts, and is, in faet, hopelessly insolvent, to make a valid assignment to secure a preference of one creditor over another, because the person making such assignment entertained a vain and unfounded hope or belief that something would be saved to himself from the wreck after the satisfaction of his debts, would, in most cases, wholly defeat the object of the statute. It is difficult to conceive, even to the most hopeless insolvents, that some turn of luck will *337 not secure them at least a fragment of their broken fortune. The statute rests upon a more solid foundation, and will not permit a person, who is insolvent and unable to meet his debts, to divest himself of his property, by an assignment in trust, to prefer certain creditors. But, in the present ease, Young not only transferred his property under such circumstances as to bring him within the statute, but Mitchell was acquainted with his situation, and took the transfer to prefer himself. Mitchell had, from a long course of dealing with him, been familiar with Young’s business for some time. As early as 1835, his brother went into Young’s employment, as clerk, for the first year: subsequently, he acted as his book keeper, and was book keeper at the time of these assignments. In the beginning of 1838, Young owed Mitchell, for merchandise, ¡$9,000. Mitchell pressed for payment. Young gave his *notes, payable in monthly instalments, and made [33? actual payments, so as to reduce this amount to $5,000. But, in the mean time, Mitchell had become responsible for Young, as indorser, to the amount of $12,000. Thus, on the first of May, Young owed Mitchell $17,000. The master’s report shows that, at the same time, Young’s debts amounted to about $56,000. Young was hopelessly insolvent. Jethro Mitchell, the brother of Roland G-. Mitchell, and the book keeper of Young, says he thinks he informed his brother of this fact. Young’s health had become entirely broken down, and his physician had directed him to quit business, at the peril of his life. Young, at this time, being confined to his house by sickness, Mitchell called upon him, and was informed that he intended to distribute all his property amongst his creditors. A few days prior to this, Young had offered to sell to Mitchell, but his offer was declined. He also told Mitchell he had no means of meeting his indorsements, except by an assignment of notes, book accounts, etc. Young did distribute some goods among his creditors, and sent to Mitchell about $6,000 worth, which were passed to Young’s account.
On the 5th of May, 1838, Young executed to Mitchell a general power of attorney, conferring upon him full authority to control both his real and personal estate ; to ship goods ; to buy and sell ; to collect and compromise his debts ; in fact, in all the business of Young, and over all his property, to exercise as full power as could Young himself.
On the 8th of May, Young executed a bill of sale to Mitchell, for the goods he had before sent him on the 1st of May, amounting to......'....................... $6,807,90
*338 On the same day he transferred to Mitchell, to pay his own debt first, and then to apply in satisfaction of other creditors, notes and book accounts, amonuting to $18,765.25
On the 5th day of May he transferred real estate, valued at 10,000.00 Refuse goods, of which no account was taken, had been sent to Mitchell, worth about................................ 2,000.00
*Mitchell received also, by virtue of these transfers, an invoice of goods from Alter, Taylor and Dewey, amounting to................................................... 5,009.01
Amounting, in all, to............................... $37,582.16
Thus, in the space of a few days, Mitchell, by virtue of irrevocable powers of attorney, assignments, transfers óf real estate, delivery of goods, notes, book accounts, etc., receives from Young all his property, of every description, amounting to more than $37,000 to satisfy a debt of $17,000.
Mitchell is a shrewd business man, although esteemed an honest one. He was fully aware of Young’s circumstances. He seems to think that, with proper management, Young had sufficient property to pay his debts. But he knew, also, that it is the experience of all business men, that a failing house, with an immense debt hanging over it, seldom meets its debts, but that creditors usually suffer. And in view of all the facts we are not permitted to doubt, for a moment, but that the object of both Mitchell and Young was, by these transfers to Mitchell, at all events to secure Mitchell, and give him a preference over other creditors ; and that the property was transferred to Mitchell by Young, in contemplation of insolvency, within the meaning of the statute. We can not find that any part of this property was received in actual payment of a debt, but that Mitchell was bound to account for the whole of it to YouDg, as a trustee, both as to its application, and for the residue, if any, after the payment of the debts. Why, then, should not Mitchell be compelled to account for all the property so received, and to distribute it under the statute ?
It is contended that Mitchell should not account for the merchandise-bought by Young of Alter, Taylor and Dewey, which Mitchell received after Young’s death, because Alter, Taylor and Dewey replevied the merchandise, although, at the trial, Mitchell obtained judgment in his favor ; nor for the amount of the real estate, because, in suits to foreclose some mortgages which existed upon it before it was transfer *340 red to Mitchell, *Mitehell disclaimed any interest, and did not [339 receive the balance of the money arising on the sales, after the satisfaction of the mortgages ; nor for such goods and effects as he passed over to Young’s administrator ; nor for the amount of goods received of Young, which he transferred to Shoenberger, in payment of a debt due from Young.
The reply to this, is, that the legal title in this property, having become vested in Mitchell by his own act, under such circumstances that the law charges him as trustee for the benefit of all the creditors, the statute makes him responsible for the whole property. If he squanders it, or improperly surrenders it up, or applies it to a use different from the one designated by the statute, he is held responsible.
When a creditor takes an assignment or transfer of the property of an insolvent debtor, to obtain a preference over other creditors, the statute interposes and fastens his responsibility, and the courts will be careful to compel him to execute the trust.
If a man wishes to escape difficulties of this sort he should not attempt to have himself preferred to his neighbors, but should, upon the more equitable principle, where there is to be a common loss among the creditors, bear his fair proportion. In Mahon et al. v. The State of Ohio, 10 Ohio, 232, the principle is expressly recognized, that the law, in cases of this character, exacts a most rigorous account; and, unless the trustee should have repented of his error, and divested himself of the property so assigned, by restoring it before the rights of creditors fasten, by their obtaining judgment at law, and filing a bill to subject such property to the satisfaction of debts, such trustee will be held to account for the whole of such property.
Mitchell is rightly charged with the amount of goods transferred by him to satisfy a debt due to Shoenberger. Because Mitchell, being the trustee for the benefit of all Young’s creditors, would not be authorized in such manner to prefer Shoenberger, by making full payment of his debt with property liable to distribution among all the creditors. Of this Mitchell seemed to be aware, and took from Shoenberger a bond of indemnity.
*In the replevin suit of Alter, Taylor and Dewey, Mitchell [340 recovered judgment for the value of the goods so replevied.
On foreclosure of the mortgages upon the real estate transferred to Mitchell by Young, Mitchell disclaimed all interest, and has not received, nor attempted to control, the proceeds.
Mitchell also handed over to the administrator of Young, refuse *341 goods, amounting to $1,536.88, and notes and book accounts to the amount of $9,118.33. All this was done by Mitchell for the express reason that he had satisfied, or very nearly so, his own debt.
The moment Mitchell has received the full benefit of the trust, so far as he is concerned, he attempts to avoid all further trouble and responsibility by shifting off the remnant, after he had obtained payment of his own debt out of the bulk of Young’s estate, upon the administrator, to satisfy other creditors. This the law will not permit, but holds him to a strict execution of the trust he voluntarily assumed for his own benefit, to obtain an advantage and preference over other creditors.
If Mitchell wishes to indemnify himself, he must look to the judgment in his favor, in the replevin suit of Alter, Taylor and Dewey ; to the proceeds arising from the sale of the real estate transferred by Young ; to the administrator to whom he handed over a portion of the property, and to the indemnity bond of Shoenberger.
There is no foundation for the complaint that the court did not render decrees against those persons to whom Mitchell had handed over portions of this property. Mitchell denied no aid in the execution of the trust when his own debt was to be paid. Having assumed this trust for his own benefit, the law steps in and compels him, without any divided responsibility, to execute it for the benefit of others entitled.
Bill dismissed at complainant’s costs, and decree affirmed.