Saufley, J.
The First National Bank of Cheyenne, plaintiff below and in error, sued the defendants, Alexander H. Swan, Thomas Swan, and F. W. Lafrentz, on a promissory note for $25,000, executed on the 28th day of April, 1887, and payable 30 days after date. Contemporaneously with the institution of the suit, an affidavit for an attachment of the property of each defendant was made and filed. In the court below, a motion to discharge the attachment was made, which was based upon an alleged insufficiency of the affidavit, and also upon affidavits intended to controvert the grounds of attachment. Upon hearing, it was adjudged that each allegation on which the writ was issued was untrue, and a conformable judgment was entered. It will be conducive to a clear understanding of the reasons upon which this opinion is based to quote those grounds of attachment which are relied upon to sustain the order: “ This affiant has good reason to believe, and does believe, that the said defendants have assigned, removed, and disposed of a part of their property with intent to defraud creditors;” and similar averments as to each defendant. “This affiant has good reason to believe, and does believe, that the said defendants fraudulently contracted the debt to recover the payment of which the above-entitled action has been brought. ” “ This affiant has good reason to believe, and does believe, that the said defendants fraudulently incurred the obligation, to recover the payment of which the above-entitled action has been brought.”
It will be perceived that these several charges are in verbal conformity to, the statutes. Section 2870 reads: “An order of attachment shall be made by the clerk of the court in which the action is brought in any case mentioned in the preceding section, when there is filed in his office an affidavit of the plaintiff, his agent or attorney, showing — First, the nature of the plaintiff’s claim; second, that it is just; third, the amount which the affiant believes the plaintiff ought to recover; and, fourth, the existence of any one of the grounds for an attachment enumerated in the preceding section, or that the affiant has good reason to believe, and does believe, that some one or more of said grounds (stating which one) exists. ”
In this case the attaching creditor adopted the more cautious method of imputing fraud to the defendants. The charge is simply one of belief and its reasonableness. Nevertheless, the language of the statute is followed. The initial inquiry presented by the motion to discharge is, is this sufficient? The question has been discussed and decided in several jurisdictions, but I have found no ion based upon attachment statutes similar in all respects to our own. In the ninth and twelfth Ohio State Reports, (Coston v. Raige, 9 Ohio St. 397; Harrison v. King, Id. 388; Emmitt v. Yeigh, 12 Ohio St. 335,) the state after whose remedial jurisprudence ours was fashioned, it is held that the language of the statute may be followed. In Kentucky, California, and in other states the same opinion is held. But, without an opportunity for an examination of the entire line of precedents, it is believed that the opinions of courts so holding are based upon statutes differing in one essential respect from the Wyoming statute, unless it be proper to except a portion of the Wisconsin statutes, which are construed by the supreme court of that state in Davidson v. Hackett, 49 Wis. 186, 5 N. W. Rep. 459, and which will be subsequently considered. Sections *359 2869 and 2870 are exact transcripts of sections 5521 and 5522, Ohio Code, with the exception that the latter do not contain the concluding provision of subdivision 4, § 2870, Code Wyo., which allows the affiant to state his beliéf of the existence of a cause of attachment, and that he has good reason for the belief.
It cannot be questioned that, when the ground of attachment is a single and complete fact, substantive in its nature, and not dependent on associate facts or circumstances to establish its existence, it will b? sufficient to state that ground in the words of the statute. Non-residency and foreign corporate existence may be said to be of this type. Further, when the ground of attachment consists of both an act and an intent, and is of such nature that the approved rules of pleading in civil actions would allow an averment that the act was done, or about to be done, with such intent, without formally setting forth the facts illustrative of that intent, in such ease'the language of the statute may be followed. Of this type are concealment to avoid the service of process, absconding with intent to defraud, and disposal of property with intent to defraud. In this last-mentioned type the substantive ground of complaint consists of two things: (1) The act done, which can be charged in direct language; (2) the purpose with which it is done, which is equally susceptible of direct averment. The evidence which may support the charge of intent need not, should not, be pleaded. The distinction between pleading the evidence which sustains the charge of a fact and pleading the facts which constitute a cause of complaint should be kept in mind. An intent — that is, a purpose, an aim, a design — is, in jurisprudence, whatever may be said of it in metaphysics, as much a fact as is a physical act performed. The one is the exertion of the power of the mind; the other, the exertion of the power of the body. The concurrence of the two, in the instances given, constitute the ground of attachment. But when the ground consists of an act done in a manner or for a purpose which makes the act obnoxious to good morals, and that act, thus united to the purpose, is described in the statute only by words of legal import implying conclusions of law from stated facts, then, notwithstanding some dicta to the contrary, I think it may be seriously doubted whether a bare recital of the words of the statute is sufficient. Of this type is the ninth statutory ground of attachment, that the defendant has fraudulently or criminally contracted the debt or incurred the obligation. In a purely technical or confined sense, an affidavit for an attachment is not a pleading. In a broader and more rational view, it is a pleading, and is so denominated by the codes of procedure of some states. No reason can be assigned why the rules which tend to the production of a material, certain, and single issue in the altercations between the parties, commonly styled “pleading,” should not prevail with equal force in the procedure for obtaining an attachment. Indeed, if a difference should exist there is not wanting some reason to hold that greater strictness of allegations should be required when the extraordinary remedies of the law are invoked than when the ordinary remedies are sought. The rule of justice which forbids the taking of property, except according to the “law of the land,” means, as is well understood by the profession, that there shall be no taking, no condemnation, before hearing. While a seizure under attachment is not a “taking,” in the sense referred to, it is nevertheless a divestiture of possession,— one of the elements of . a complete title. If by the policy of our laws the courts will not so much as inquire whether a citizen’s property shall be taken unless the accusation or complaint which is to authorize the'taking is set forth in the way experience hath demonstrated to be wise, may it not, upon fair analogy, be held that, when a seizure — a degree of taking — is to be made before hearing, the accusation or complaint should at least conform to the approved rules of pleading?
Be this as it may, it is obvious that if a petition, setting forth a cause of action against a defendant, for fraudulently contracting a debt or criminally incurring an obligation, should merely charge, in the language of the statute, that the defendant fraudulently contracted the debt, or criminally incurred the obligation, it would be held bad on demurrer. No citation of authority or process of elaborate reasoning is needed to show that, in such case, the charge of fraud or criminality is but the conclusion *361 of the pleader. The court would require of him to state the facts which are supposed to constitute the fraud or crime. If this be a reasonable requirement, and it is exacted before the court will even hear the evidence upon which the plaintiff proposes to take the property of the defendant, or, indeed, before the court will compel the defendant .to answer the accusation, why is it not the law thatthe plaintiff in attachment shall conform to the same rule before he seizes the property of the defendant? Upon what principle of jurisprudence is a ministerial officer authorized to issue a writ for the seizure of property upon an allegation in an affidavit which, if embodied in an action proper, a judicial officer would not require a defendant to answer?
' It is one of the elemental rules that there shall be a correspondence between the alle-gata and the probata. If the naked charge that a defendant criminally contracted a debt be an allegation of fact, as distinguished from a conclusion of law and of fact, then it would logically follow that, if the defendant were allowed by statute to file a traverse of the affidavit, and did so file it, the plaintiff, to maintain his side of the issue, need only introduce a witness who would testify, in hceo verba, “the defendant did criminally contract the debt.” In opposition, the defendant would introduce a witness who would testify, in hceo verba, “the defendant did not criminally-contract the debt.” Is it not apparent that there would then thus be, not simply the anomaly, but the absurdity, of a trial before the court without a single fact having been put in issue, or a single fact stated by a witness? Would it be anything more than an investigation by a judicial tribunal of the private opinions of a number of citizens?
Without meaning to decide these questions conformably to the line of reasoning presented, (since it is not necessary that a -decision be made,) it does nevertheless seem imperative that there should, in the affidavit, be an averment of the facts conducing to show the fraud or crime, when, as in the case -at bar, the affiant charges only that he believes, and has good reason to believe, that the defendant has perpetrated this wrong. Let us subject the statute to a brief analysis. 'The clerk shall issue the order of attachment when an affidavit is filed showing, among other things, that some one of the grounds for attachment exists, or that affiant has good reason to believe, and does believe, that one of them exists. If the affiant chooses to avail himself of only the latter part of the statute, there must be in the showing these two things: (1) the belief; (2) a good reason for the belief. With respect to the first, it may be said that affiant’s statement of it is sufficient. He is entitled to speak of the impressions upon or the state of his own mind. It is but a declaration of his own thought. But, with respect to the second, a different rule prevails. His affidavit must show a good reason to believe that the ground exists; that is, that the fraud was perpetrated. Is this good reason show.* by afiiant’s declaration that he has a good reason? It would be a unique process of reasoning which would force the conclusion that a good reason for a belief is shown to exist because it is said to exist. In what way must an afliant show that he has good reason to believe that an act has been committed in a manner which makes it criminal? Upon a plain dictate of common reason'it can be shown in but one way, — to state the circumstances and manner of doing.
Presenting the substance and meaning of the statute, as applied to the case at bar, it is this: The plaintiff may have its order of attachment issued if it will file with the clerk an affidavit which will show that it has a good reason to believe that the defendants fraudulently contracted the debt on which they are sued. It will be observed that the language of the statute is not that the affidavit shall state or allege, but that it shall “show.” The two words are not synonymous. Webster defines “show” in its transitive sense, — the sense in which it is used in the statute, — -thus: to exhibit or present to view; to cause to see; to make apparent or clear by evidence, testimony, or reasoning; to prove; to give the reason and explanation of; to manifest; to evince. So it is that the statute might read, without change of meaning, “the plaintiff shall exhibit a good reason for his belief, or he shall make apparent or clear by affidavit that he has a good reason to believe the defendant has fraudulently contracted the debt.”
Now, an affidavit is one form of presenting testimony. Section 2609 declares: “Tes- *363 fimony of witnesses maybe taken — First, by ■affidavit; second, by deposition; third, by ■oral examination. ” Section 2610 defines each thus: “An affidavit is a written declaration under oath, made without notice to the adverse party; a deposition is a written declaration under oath, made upon notice to the •adverse party; and oral testimony is that delivered from the lips of the witness.” It will be noticed that the only difference between an affidavit and a deposition is that ■one is made without and the other with notice. Now, suppose the statute, instead of ■conferring power upon the clerk to issue the writ when an affidavit is filed, should confer that power when a deposition is filed, showing good reason for deponent’s belief that the 4efendant in attachment had fraudulently contracted the debt; and suppose, further, that tlie deponent should testify only that he ■did believe, and bad good reason to believe, such fact existed. Could a rational doubt be ■entertained that such testimony would bein-•eompetent? The difference between the two forms of testimony rests wholly on the question of notice. Why should a particular form of statement be held competent when made in an affidavit, and at the same time held grossly incompetent when embraced in a deposition? It is no response to this to say that the question of the relevancy or competency of testimony cannot arise in such case. It does arise. The statute expressly declares that the attachment can issue only upon an affidavit. Another statute declares that an affidavit is one of the forms of taking or presenting testimony, and so it results that, where the law declares that a fact shall be shown by affidavit, it means that it shall be shown by testimony. It would seem idle to enlarge further, by affirming what is universally conceded, that when-afact is to be shown by testimony, competent testimony, and no other sort, can be lawfully considered or acted upon.
If the law had made it a ground of attachment thata debtor had violated the revenue law orthe stock law, or any other general law, with permission to a creditor to have his writ upon filing an affidavit showing that he had good reason to believe that his debtor was guilty of one or ttie other, and pnrsuant to this the creditor should make his affidavit stating that the debtor had violated the stock law, would any judicial tribunal hold such testimony competent for any purpose? I perceive no difference in principle between this and the case under consideration. We cannot afford to indulge the presumption that the legislature intended to alter the established rules of evidence in favoritism towards extraordinary remedies. We have no warrant to say that the legislature designed .to authorize the issuance of an attachment upon a character of testimony which would receive judicial condemnation in any other procedure wherever the common law has taken root.
The proposition here advanced may be summarized thus: The affidavit of an attaching creditor is obviously something more than a piece of paper, and must be classified. It is, in its nature and intendment, either a pleading or it is testimony. In assigning it according to its legal relations, it must fall under the one head or the other, if, indeed, it may not properly fall under both. If the former, then its sufficiency must be tested by the rules of pleading; if the latter, then by the rules of evidence. It is needless to repeat that the application of either test reveals the defect.
The Ohio cases cited supra are not in conflict with these views, excepting the dicta contained in the reasoning of the court. In Coston v. Paige, 9 Ohio St. 397, the ground of attachment was a disposition of property with intent to defraud. In Harrison v. King, Id. 388, the plaintiff alleged that one of the defendants was about to remove his property, which would have the effect to delay the collection of the debt. In Emmitt v. Yeigh, 12 Ohio St. 335, the plaintiff charged that the defendant had conveyed his property to his son with the intent to defraud his creditors. In each case the supreme court held that a statement of a cause for an order of attachment, made in the language of the statute, is sufficient. This general principle must, however, be confined to the particular facts of the cases decided. There is nothing to show that it was intended to be of universal application, and, if so intended, it would possibly be regarded as a dictum, even by the Ohio courts, except as to those cases where the same grounds of attachment existed, or other grounds bearing towards them a strong legal analogy. In none of these cases was the charge made that the defendant fraud *365 ulently contracted the debt, nor did the affi-ant rest his allegation upon a belief, and its reasonableness, that the cause existed.
In Wheeler v. Farmer, 38 Cal. 203, the supreme court holds that it is not necessary for the affiant to state the probative facts requisite to establish the ultimate facts. But it does not appear from the opinion what ground of attachment was relied on, nor does it appear that there is any statute in that state allowing the affiant to simply charge that he has good reason to believe that the cause exists. The court bases its opinion seemingly on the phraseology of the statute, without quoting it, and uses this language: “Under our statute, it is the duty of the clerk of the court in which the suit is commenced to issue the writ upon the filing by the plaintiff of an affidavit stating the ultimate facts in the language of the statute.” By the words “ultimate facts” it is understood is meant the ground of attachment in manner and form as expressed by the statute. And so this ease decides nothing more than that the statute expressly and imperatively requires the clerk to issue the writ when the words of the statute are employed. His duty to do so is by virtue of an unequivocal mandate imposing that obligation.
The case of Davidson v. Hackett, 49 Wis. 186, 5 N. W. Rep. 459, is more pertinent to the issue here involved than the other cases cited, and tends quite forcibly to sustain'the contention of counsel for plaintiff. In that ease the attaching creditor, following the language of the Wisconsin statute, made affidavit that he had good reason to believe that the defendant has assigned, disposed of, and concealed his property with intent to defraud his creditors. The defendant filed a traverse denying that he had assigned, or disposed of, or concealed his property with such intent. On proof heard as to the issue tints joined, the court below discharged the attachment, and the creditors appealed. The supreme court affirmed the judgment of the circuit court. In the former court counsel for appellants contended that the issue was not whether the defendant had in fact disposed of his property with fraudulent intent, but whether the creditors had good reason to be- ■ lieve that he had; arguing that if the creditors had sufficient reason to induce this belief, no matter how radically they were mistaken in fact, then the court should have sustained the attachment. In combating this argument, the supreme court used this language: “If we make the proper distinction between the grounds upon which the law authorizes the attachment to issue, and what proof must be made of the existence of such grounds before the attachment can issue, there is no difficulty in giving the statute its proper construction. The existence of certain facts justifies the creditor in attaching his debtor’s property before he obtains judgment upon his claim against him, and before it has been judicially determined that he has in fact any just claim against his alleged debtor. * * * It is clear that the legislature makes the existence of some one of the facts above stated necessary in order to justify the issuing of the writ of attachment; but as the delay which would necessarily follow if the existence of such facts, or any one of them, were required to be established by judicial inquiry before the attachment issued, might defeat the very object sought to be obtained by the writ, the legislature have said that the writ may issue in the first instance, without plenary proof of their existence; that, for the purpose of issuing the writ and seizing the property of defendant thereon, it should be sufficient proof of the existence of such fact or facts, if the plaintiff, or some one in his behalf, shall make an ex parte affidavit of their existence, or that he has good reason to believe that they do exist, without stating any facts or grounds upon which his knowledge or belief is founded.”
With the greatest possible respect for this opinion, and conceding to it much weight of authority, it seems to me that, in that line of reasoning by which it characterizes the delay following a judicial inquiry as to the existence of facts as possibly destructive of the end sought to be obtained by the writ, the court confuses the doctrine of pleading the facts with the practice, always reprehensible, of pleading the evidence by which the facts are to be sustained. It is not held by any one that there should be “plenary proof” of the existence of the fact alleged before the writ issues. No authority, or even dictum, can be found advancing the doctrine that, to authorize, the issuance of an attachment under statutes similar to those of Wisconsin and Wyoming, there should first be a judicial in *367 quiry into the sufficiency of the evidence relied upon to sustain the writ. In assailing this position, it is more probable that the court combats without an adversary. But I do hold that in every proceeding by which property is to be taken or seized, whether that proceeding be by action or in that form known as “special,” the spirit of the law, and a fair interpretation of its letter, require, that some fact — not an inference or conclusion from a supposed state of facts, predicated upon an affiant’s statement that he has good reason to believe- his inference is correct, but that some fact — be alleged in direct, unequivocal language, which, if it be found to exist, will render the defendant amenable to the process of the law. A fact charged is one thing; the evidence which will support the charge is another. The first is a thing to be averred; the second, a thing to be omitted from averment. To a certain extent, I am in accord with the Wisconsin court, but am unable to perceive that its line of argument applies to the issue in this ease. Proceeding further, the court says: “There is every reason, therefore, why the issue upon the traverse should put in issue the fact of the fraud or other cause, and not the belief, or good reason for the belief, of the plaintiff as to its existence. The language of the statute itself would seem to leave little doubt as to what is put in issue.” The statute is then quoted, and the court, interpreting the statute, continues: “These facts [put in issue by the traverse] are * * * that the defendant is a non-resident of the state, or that he has committed some one or more of the fraudulent acts enumerated in the statute. It clearly is not a material fact, within the meaning of that section, whether the person making the affidavit knows, or has good reason to believe, that such facts exist.”
Under the Wisconsin statute, Wbich allows a traverse to be filed by the defendant, arid which limits the traverse to the negation of the ground of attachment, as distinguished from the affidavit made to procure the issuance of the writ, the opinion of the court that the issue is upon the cause, and not upon the statement of that cause, seems to be faultless. But how far that opinion may be accepted as a general authority upon cognate questions depends chiefly, if not wholly, upon the measure of conformity of the statutes of other jurisdictions to the Wisconsin statute. Suppose the Wisconsin statute had read, as do the statutes of some other states: “ The defendant may file his affidavit denying all or any of the statements of the affidavit on which the attachment is issued, and thereupon 'he attachment shall be considered controverted, and the affidavits of plaintiff and defendant shall be regarded as the pleadings concerning the attachment, and have no other effect.” In such case, would not the issue necessarily be that which is made by the traverse? They are the pleadings on the attachment branch of the case, and the object of all pleading is the production of an issue. If the issue be one which the court cannot try, or which is not determinate of the rights of one party or the other, then the pleadings are defective. If the plaintiff tenders a false issue, and it is accepted, or, in other words, if he makes his charge in such form as that the charge does not conform to the statutory ground of attachment, and the defendant elects to meet the charge as made, by filing his traverse, then must the plaintiff suffer the consequences of his own mistake.
Now, the Wyoming Code contains no statute expressly allowing the defendant to file a traverse either of the ground of attachment, or of the statements of the plaintiff made in his affidavit for the writ of attachment. The only provisions tending in this direction are found in sections 2910, 2911. The first reads: “ The defendants may at any time before j udgment, upon reasonable notice to plaintiff, move to discharge.the attachment as to the whole or any of the property attached.” Second: “When the motion is made upon affidavits on the part of the defendant, or papers and evidence in the case, but not otherwise, the plaintiff may oppose the same by affidavits or other evidence, in addition to the evidence on which the order of attachment is made. ”
From these provisions, it appears that the defendant is required to proceed by motion, and that any affidavit used by him is to be taken, not as a “traverse,” in the technical sense of that word, but as an instrument of evidence. But the motion to discharge which is allowed is, in its functions and office, similar to a demurrer, if based upon defects apparent on the record. If the plaintiff should omit an averment of the justice or amount of *369 his claim, this motion would reach the defect; otherwise the action of the clerk in issuing the writ would be conclusive, and the defendant would be remediless. In the case at bar, the defendants did file an affidavit attempting to deny the grounds of attachment, but, as we have seen, this was not permissible, as such. Some of the denials were too broad, and put nothing in issue. They were fatally defective, in this: that the denials of the grounds of attachment were conjunctive, instead of disjunctive. But, besides this, the defendants availed themselves of the privilege of making a motion to discharge upon the ground of insufficiency of plaintiff’s affidavit. What question is therefore raised by such motion? By fair analogy, it seems that every question arising out of the record is raised upon which depended the plaintiff’s right to have an attachment issued. Upon what does that right depend? Clearly, as much upon plaintiff’s obligation to make an affidavit in proper form, as upon the independent fact that the defendants have committed some act obnoxious to the law. In this view of the matter, the principles of Davidson v. Hackett, supra, are without application. There a formal traverse was allowed and filed. The issue was made up, and, according to statute, it was confined to the alleged existence of the ground of attachment, and did not, and could not, reach the manner and form in which that ground was charged in the affidavit. While the form of procedure under the Wyoming statute may not be quite so systematic, and the statute itself may not be expressed with that accuracy of language necessary to convey unmistakable meaning, by giving to it a fair and reasonable interpretation, it is broader in its scope than the Wisconsin statute, and will enable the defendant to avail himself of every defect in the proceeding of the attaching creditor. '
The foregoing views relate to the opinion I entertain as to the sufficiency of the affidavit filed by the plaintiff, and would constrain me to the conclusion that the judgment of the district court should be affirmed, except for one thing. In the court below the defendant filed his counter-affidavit, embodying in it a motion to discharge the attachment because of insufficiency of the affidavit of the plaintiff. As the record sufficiently discloses, the court was not at any time asked by defendant to adjudicate this question, and it did not pass upon it, either at the beginning of the trial of the grounds of attachment nor in the rendition of final judgment. Both parties proceeded at once to try the questions of fact which were raised, and no attention seems to have been given by any one to the motion to discharge upon the ground that the affidavit of plaintiff was insutlicient. I think that this omission tp request the action of the court, and consenting to proceed to an investigation of the facts, may be likened to the failure, for instance, of a defendant who has filed a demurrer to a pleading supposed to be bad for merely formal defects, and fails or omits to ask the court to rule upon it, but files his answer, and voluntarily proceeds to trial. In such case the defendant is deemed to have waived his demurrer, and cannot, after verdict and judgment, be heard upon the grounds alleged in his demurrer. The rule would be different if it went to the jurisdiction of the court or to the cause of action. Here the question raised by the motion was one relating to form. It was not relied on below, a ruling was not asked, and none was made. I must therefore conclude that it was waived, and that this cause must be considered and decided independently of it.
Counsel for defendant in error contend that the judgment should be affirmed because the plaintiff did not make a motion for anew trial. This was not necessary. The issue tried by the court was not one of fact or of law arising out of the pleadings. Section 2652 defines a new trial as a “re-examination in the same court of an issue of fact after a verdict by a jury, a report of a referee or master, or a decision by the court;” and the sixth subdivision of the same section provides that a new trial may be granted upon the ground that “the verdict, report, or decision is not sustained by sufficient evidence, or is contrary to law.” Bearing in mind that a new trial is as thus defined, — that is, that it is a reexamination of the same issues previously tried, — it becomes important to know what is meant by a trial and by an issue, in the legal acceptation of those words. Section 2514: “A trial is a judicial examination of the issues, whether of law or of fact, in an action or proceeding.” Section 2515: “Issues arise on the pleadings where a fact or concln *371 sion oí law is maintained by one party, and controverted by the other. They are of two kinds: First, of law; second, of fact. ” From these provisions, and from the sections which follow those quoted, it seems clear that the action of a court in hearing and determining a motion to discharge an attachment is not, in a strictly legal sense, a trial, and therefore the action of the court may be reviewed in error, if the entire record, including the final judgment in the cause, is brought up, although a motion for a new trial was not made below.
Of the grounds of attachment alleged, the first about which there seems to 'be serious controversy is that the defendants fraudulently incurred the obligation to recover the pa\ ment of which the action is brought. Thi note is dated April 28, 1887. From the testimony it appears to be the renewal of a note, or several notes, which the plaintiff had held against the defendants for perhaps one or more years prior to that date. In the renewal of the note, Lafrentz acted as the agent oi the defendants Alexander and Thomas Swan, who were absent at the time, and he affixed their signatures to the note. It is satisfactorily shown that his agency for this purpose was full and complete. The only testimony offered on this head was that of the president of the bank. On direct examination, the following questions and answers appear in the bill of exceptions, which is all of the testimony elicited by the plaintiff on the subject of fraudulent representations: “Question. While the negotiations were in progress in relation to the renewal of this paper, state what, if anything, was said by you to Mr. Lafrentz in relation to the financial standing of Swan Bros., and what, if any, reply was made. Answer. I asked Mr. Lafrentz the direct question, what kind of condition they were in. He replied that he had recently taken off a balance sheet of Swan Bros., and that they were worth $800,000, over and above their liabilities. Q. What further did you ask him? A. I asked him what it consisted of. He said: ‘Good property; stocks and other property, figured at a fair valuation.’ Q. Now you may state what, if anything, induced you to renew the paper. A. The representations made by Mr. Lafrentz. ” On cross-examination, the witness stated that the renewal was not made entirely on the strength of this representation, but partly on a representation Alexander Swan had. previously made, that in a few days money would come to him from England, with which he would pay a considerable portion of his indebtedness to the bank.
On this testimony a question may be made. When did the Swan Bros, incur the obligation to pay this debt? Was it at the time of the renewal of the note, or at the time the debt, of which the renewal note is but an evidence, was created? It may be argued with some force that it was when the debt was first created.. It was then that the consideration was received. The obligation to pay the debt was concurrent with the obtaining of the money. The note first executed was but the contemporaneous evidence of the obligation, and the note renewed only a substituted memorial of the original transaction. When this note was renewed, the consideration had actually passed, and with the receipt of that consideration the resulting obligation, continuing in undiminished force and perpetuated in the renewal, instantaneously arose. It would therefore follow, if this view be correct, that fraudulent representations, made at the time of or pending the negotiations for renewal, would fail to establish the proposition that the obligation to pay the debt was fraudulently incurred. But, waiving further consideration of this particular topic, and assuming that the obligation was incurred when the note was renewed, does the evidence show the fraud charged?
To constitute a fraud through the practice of which another is induced to transfer value, there must be something more than false representation. The representation may be false, it may be made to induce action, and it may be acted on; it may be as to a matter exclusively within the speaker’s knowledge, —and yet it may not amount to actual fraud in law. The materiality of representation is a factor not to be eliminated. The representation must be as to a material fact, which is acted on by the complainant to his damage, and reasonably believed by him to be true. A statement which is but an expression of an opinion has never, unless in exceptional and peculiar cases, been held to be the representation of a fact. Judicial decisions throughout the cou ntry, to the effect that representations of value, or expressions involving deduction and calculation, though false, *373 do not imply legal fraud, are so numerous that they need not be cited. The representation made by Lafrentz that the Swan Bros, were worth $800,000, over and above their liabilities, and that this worth consisted of property and stocks figured at a fair value, is, in its most pronounced form, an expression of opinion as to values, — an opinion, too, which is based on proper calculation, and the estimated price of stocks. Nor does it appear from the testimony that the bank officer made any inquiry of Lafrentz as to the location of the property, or the habitat of -the corporations in which the stock was held, nor as to the income or dividends of either of them. A party about to consummate a contract by which he parts from property cannot, when the opportunity is before him, and there is nothing in the situation of the parties to prevent investigation, decline to prosecute a reasonably diligent inquiry, refuse to exercise his own judgment, and then be heard to complain of an imposition or fraud practiced on him. Besides, as it appears from this officer’s testimony, he did not rely entirely on Lafrentz’s representations. They may have been persuasive, but.they were not convincing nor controlling. His reliance in part was on a previously made promise of Alexander Swan that, when some money should come from England, he would pay $30,000 on his general indebtedness to the bank. It is sufficient to remark concerning this statement of Swan’s, even if it had been made at the time of the renewal, that it was not a representation, but a promise. “No equitable estoppel arises from a mere promise.’’ 2 Pom. Eq. Jur. § 877, and note. A representation which is promissory in its nature, which relates to the future, or which depends upon contingencies which may or may not happen, furnishes no foundation for a claim of fraud or deceit. Thorwegan v. King, 111 U. S. 549, 4 Sup. Ct. Rep. 529. Moreover, from anything to the contrary which appears in the record, Swan may have kept this promise. He may have paid this particular sum on his general indebtedness, and, while it is wholly immaterial whether he did or not, it may be presumed that he did, since nothing in the record shows to the contrary.
The next inquiry is, did Alexander and Thomas Swan, or either of them, dispose of property with intent to defraud creditors? On the 14th day of May, 1887, acknowledging their insolvency, they executed an assignment of their property for the equal benefit of their creditors. It is shown by the evidence that the larger per cent, of this indebtedness was in existence some years anterior to the date of assignment, and that it amounted to hundreds of thousands of dollars. On the 18th day of August, 1886, Thomas Swan purchased, for the sum of $6,000, two improved lots in the city of Cheyenne. Subsequently, at a date not disclosed, he conveyed this property to Kelly, who reconveyed to Swan’s wife. The scheme was for the purpose of putting the title to the property in Mrs. Swan, and it must therefore be regarded as a voluntary conveyance to the wife. On the 10th day of November, 1886, Alexander Swan, for the consideration, as recited in the deed, of $30,000, purchased and caused to be conveyed to his daughter a highly improved piece of real property in Cheyenne. This must also be regarded as a voluntary conveyance. There can be no reasonable doubt that each of the Swans was, at the date of these conveyances, largely in debt, and trembling on the verge of bankruptcy. Conveyances made upon a valuable consideration are not presumptively fraudulent, although the grantor’s indebtedness exceeds the value of all his property. The transaction, in the absence of proof to the contrary, is held to be only a change of assets. The rule is different as to voluntary conveyances. These create a presumption of intent to defraud existing creditors, but this presumption is disputable, not conclusive. When a voluntary conveyance is attacked as fraudulent by an existing creditor, the burden is on the opposite party to show by proof the condition of grantor’s affairs at the time, the amount of his indebtedness, and such other facts and circumstances as will tend to rebut the presumption. If this is not done, the presumption of law must govern, and the conveyance be held fraudulent. In Dunlap v. Hawkins, 59 N. Y. 347, the court most excellently summarizes the law on this subject: “By proving the pecuniary circumstances and condition of the grantor, * * * his business, and its risks and contingencies, his liabilities and obligations, absolute and contingent, and his resources and means of meeting and solving his obligations and showing that he was neither insolvent *375 nor contemplating insolvency,' and that an inability to meet his obligations was not and could not reasonably be supposed to have been in the mind of the party, is the only way in which the presumption of fraud, arising from the fact that the conveyance is without a valuable consideration, can be repelled or overcome.” In harmony with this opinion are Sexton v. Wheaton, 8 Wheat. 229; Kehr v. Smith, 20 Wall. 31; Jones v. Clifton, 101 U. S. 225, and many other authorities.
On the trial below the defendants made no attempt to rebut the presumption of fraud. Indeed, it cannot be considered a remark unfortified by the record, that it was not possible for them, or either of them, to repel the presumption. Their entire testimony on the subject of their business was confused, unsatisfactory, and characterized by a strange lack of knowledge of their own affairs. The conclusion is irresistible that they are both shown to have conveyed property to their relatives which their creditors had a right to look to as security for their debt. No satisfactory explanation of this is given, or attempted to be given. Such conduct the law denounces as fraud, and it furnishes ground for attachment. It is unnecessary to discuss other questions which are relied upon by plaintiff in error, as the judgment of the lower court must be reversed on its ruling as to these voluntary conveyances. The chief justice, having been of counsel in the court below, does not sit in the hearing or participate in the decision of the case. Justice Corn does not commit himself as to the sufficiency of the affidavit of plaintiff, but concurs in the residue of the opinion. Wherefore the judgment of the district court discharging the attachment is reversed, and the cause remanded, with directions to vacate the order of discharge, and to enteran order sustaining the ground of attachment, as herein indicated, and for such further proceedings as may be proper, either in the subsequent prosecution or administration of the cause.