## PACIFIC FRUIT & PRODUCE COMPANY, INC. v. PALMER

(No. 2110; August 22, 1939; 93 Pac. (2d) 504)

For the appellant, there was a brief by *Louis Kabell, Jr.* of Evanston, and oral argument by *Mr. Kabell.*

For the respondent, there was a brief and oral argument by *Rush L. DeNise* of Rock Springs.

Burgess, District Judge.

The Pacific Fruit and Produce Company brought suit in the District Court of Sweetwater County against Sherman H. Palmer doing business under the firm name and style of Speedway Market, Rock Springs, Wyoming, to recover the sum of $585.28, for goods, wares and merchandise and caused a writ of attachment to be levied upon his property. The defendant Palmer filed a motion to discharge the attachment and traversed the grounds upon which the writ had issued. A hearing was had upon the motion at which both sides submitted evidence, the court discharged the attachment and the plaintiff Pacific Fruit and Produce Company has appealed to this court from the order of discharge.

The writ of attachment was based upon an affidavit of plaintiffs' counsel alleging three statutory grounds as follows:

"That the said defendant is about to remove his property and a part thereof from the jurisdiction of the Court, with intent to defraud his creditors; that defendant is about to convert his property and a part thereof into money for the purpose of placing it beyond the reach of his creditors; and that defendant has assigned, removed, disposed of, and is about to dispose of his property and a part thereof, with the intent to defraud his creditors, and is now so doing."

The motion of Palmer to discharge the attachment was supported by his affidavit, a portion of which is as follows: "That plaintiff in its affidavit for attachment alleged the following facts as grounds for attachment to-wit: (Here is set forth the grounds as they appear above) that said statements are wholly false and untrue."

The rule in this state is that "When the grounds for an attachment are positively denied by the defendant in the affidavit in support of the motion to discharge the burden then rests upon the plaintiff to sustain them by additional evidence." Collins v. Stanley, 15 Wyo. 282.

At the hearing upon the motion in the trial court counsel for the Produce Company insisted that the affidavit of Palmer was not a sufficient denial of the grounds of attachment and did not cast any burden upon the plaintiff to sustain the affidavit for attachment.

The court ruled against him and he now specifies this as error.

There is no prescribed formula for denial of grounds set forth in an affidavit for attachment. The language of the rule in the Collins case is that the grounds for attachment be "positively denied." Certainly the words in the affidavit "that said statements are wholly false and untrue" constitute a positive denial. It was not necessary to make a separate and specific denial of each ground. We hold the affidavit to be sufficient and that the lower court properly required the plaintiff to sustain his affidavit for attachment.

In the order discharging the attachment it is recited "that the alleged grounds of attachment did not exist and that by reason thereof said attachment was issued wrongfully, illegally and without probable cause * * *." It is now claimed that the finding "that by reason thereof said attachment was issued wrongfully, illegally and without probable cause" was in excess of the jurisdiction of the court and completely without the issues before the court." This finding went further than necessary and was beyond the issues and, inasmuch as the order as entered is sufficient without this finding the order should be modified by striking out the following "that by reason thereof said attachment was issued wrongfully, illegally and without probable cause."

Error is specified that "the evidence is insufficient to support the findings and order of the court discharging the attachment."

In August, 1937, the defendant Palmer opened in

Rock Springs a small store for the sale of groceries, meats and vegetables. He did a fairly good business until in October of that year when it began to fall off. For a time he had help and then he and his wife did all the work. He did a credit business and as it turned out extended credit unwisely. His business became less and less until in the latter part of December and just before his property was attached his assets approximated around $550 to $750, depending upon what witnesses' estimates are taken while his liabilities were in the neighborhood of $1,000. His business was in a rapidly failing condition. Counsel for plaintiff says he was insolvent.

On December 21 and again on December 22, 1937, he was visited by representatives of the Produce Company who demanded he pay the bill he owed them amounting to $585.28. He told them his collections had been poor but he would try to borrow Two Hundred Dollars and pay them in part. He did try, it seems, but raised no money and nothing was paid on the account. These representatives estimated the stock of merchandise on the shelves to be about $335 on December 21st and on the following day it was fifty to seventy-five dollars less.

In the conversations between them and Palmer on these two days Palmer, if they are to be believed, misrepresented the amount of the outstanding accounts payable to him and the amount of his indebtedness to other parties. The Produce Company, however, never sold him any goods after these conversations.

Counsel for the Produce Company says in its brief "that the defendant had over $900 during the month of December but reduced only one of the obligations and failed to make payment of any kind whatsoever to this plaintiff as promised." After testifying that he took in $993 during December, Palmer was interrogated as follows:

"Q. How much did you pay out for merchandise that month?

"A. I paid the Pacific Fruit and Produce Company seventy-five dollars on the 2nd and the merchandise actually bought, and I had been paying off some of these accounts, and the day I was closed, or when they served the attachment, I had fifty cents in the bank.

"Q. All of that nine hundred dollars had been expended from the first of December?

"A. Yes, for, for merchandise and paying these accounts."

There was no evidence that Palmer was removing or trying to remove any property beyond the jurisdiction of the court, and the only sales shown to have been made by him were those in the ordinary course of his grocery business. Such sales may, as contended for by counsel for appellant, if made with the intent to cheat or defraud his creditors constitute a ground for attachment. This intent, it is said, appears from the failure to apply the proceeds of the sales to the reduction of his indebtedness. Except for the $993 received during December, reference to which has been made above, it does not appear what the daily sales amounted to but they must have been small and after deducting the necessary expense of operating the business, and the personal expenses of Palmer and his wife (it seems they were living off the business), there could have been little or no profit and little, if anything, to apply on the indebtedness.

Under all the facts and circumstances we do not see how we can say that the trial court should have found these sales were made with a fraudulent intent. The burden of showing the fraudulent intent was upon the plaintiff, the lower court heard and saw the witnesses, and we see no justification for our disturbing his findings. The order discharging the attachment as modified is affirmed.

RINER, Ch. J., and KIMBALL, J., concur.