**N. F. SMITH and Edith A. Smith,**
Appellants (Defendants below),

v.

**VAREL MANUFACTURING COMPANY,**
a corporation, Appellee (Plaintiff below).

No. 3104.

Supreme Court of Wyoming.

Feb. 20, 1963.

Jack D. Emery, Casper, for appellants.

Brown, Healy, Drew, Apostolos & Barton, Morris R. Massey, Casper, for appellee.

Before PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Varel Manufacturing Company filed a complaint against N. F. Smith and Edith A. Smith on an open account, a promissory note, and for the value of certain goods consigned by plaintiff to defendants. It was alleged, among other things, that defendants were husband and wife and that either they operated the Jack Smith Tool Company as co-partners or N. F. Smith operated the said business and had without consideration while insolvent transferred certain assets of the business to Edith A. Smith and beyond the reach of creditors. Concurrently, plaintiff secured the issuance of a writ of attachment which defendants moved to dissolve. The court overruled the motion and defendants have appealed.

The attachment was issued pursuant to § 1–226 ff., W.S.1957, and the affidavit contained the statement that defendant, N. F. Smith, had transferred and paid out moneys from his business, Jack Smith Tool Company, to defendant, Edith A. Smith, with intent to defraud creditors, and that said defendant, N. F. Smith, had sold certain consigned property belonging to plaintiff, collected and kept the proceeds from such sales, thereby unlawfully converting to his own use property of plaintiff and to that extent had fraudulently incurred that part of the obligation owed by him to plaintiff.

Defendants by affidavits specifically denied the mentioned allegations of plaintiff's affidavit for attachment and asserted that N. F. Smith was the owner and sole proprietor of the business and that Edith A. Smith had no interest therein. Plaintiff under authority of § 1–268 then filed two opposing affidavits. The first was by Porter, plaintiff's sales manager, and alleged among other things that the Jack Smith Tool Company bank account was in the joint names of defendants with authority of Edith A. Smith to draw checks thereon; that N. F. Smith had transferred $1,000 per month into the separate account of Edith A. Smith; that, with intent to defraud creditors, four motor vehicles purchased out of the funds of the Jack Smith Tool Company had been placed in the joint names of the defendants; and that N. F. Smith had sold certain consigned property belonging to plaintiff, collected and kept the proceeds, and failed to account for same. The second was by Vice, a former employee of N. F. Smith, who said that on numerous occasions N. F. Smith had remarked that he had it "fixed" in such a way that creditors could not "get at him" if such creditors "closed in"; that so far as affiant knew Edith A. Smith had taken $1,000 per month out of the business without performing any work or services for more than a year last past; and that N. F. Smith had given affiant reason to believe from his remarks that he had taken moneys and other assets from the business, put them in his wife's

name or in their joint names, or concealed properties and assets for the purpose of keeping the same beyond the reach of his creditors. This affiant also described his version of the sale of the consigned property previously mentioned.

Defendants do not contend that in the first instance the writ of attachment was improperly executed, conceding the affidavit to have been couched generally in the terms of the statute, but argue that when they filed the motion to dissolve, the burden of proving the grounds of attachment immediately shifted to plaintiff, citing Pacific Fruit & Produce Co. v. Palmer, 54 Wyo. 430, 93 P.2d 504, and Collins v. Stanley, 15 Wyo. 282, 88 P. 620, 123 Am.St.Rep. 1022, and point out further that plaintiff in the trial court admitted the burden. They maintain that the court erred in finding the attachment was proper, insisting that the counter-affidavits were grounded only upon information and belief of the affiants and constituted no credible evidence to sustain the burden of proving that N. F. Smith had assigned, removed, disposed of, or was about to dispose of his property or a part thereof *with the intent to defraud his creditors* within the provisions of subdivision 8, § 1–226, or had fraudulently or criminally contracted the debt or incurred the obligation for which the suit had been brought, subdivision 9, § 1–226.

As the cause relates to the ground listed in subdivision 8 we find no statement in plaintiff's affidavits that either N. F. Smith or Edith A. Smith was insolvent, bankrupt, or in financial difficulty, and this point was the subject of discussion at the time of the argument in the trial court when plaintiff's counsel in response to the court's inquiry admitted that there had been no showing of insolvency but said, "We believe him to be insolvent now, Your Honor, if he is not, he is acting in a strange way."

Plaintiff insists on the strength of a quotation from First Nat. Bank of Cheyenne v. Swan, 3 Wyo. 356, 23 P. 743, 750, that the fraudulent intent might be inferred from

the voluntary conveyance of the husband to the wife:

"* * * There can be no reasonable doubt that each of the Swans was, at the date of these conveyances, largely in debt, and trembling on the verge of bankruptcy. Conveyances made upon a valuable consideration are not presumptively fraudulent, although the grantor's indebtedness exceeds the value of all his property. The transaction, in the absence of proof to the contrary, is held to be only a change of assets. The rule is different as to voluntary conveyances. These create a presumption of intent to defraud existing creditors, but this presumption is disputable, not conclusive. When a voluntary conveyance is attacked as fraudulent by an existing creditor, the burden is on the opposite party to show by proof the condition of grantor's affairs at the time, the amount of his indebtedness, and such other facts and circumstances as will tend to rebut the presumption. If this is not done, the presumption of law must govern, and the conveyance held fraudulent. * * *"

The rule as quoted in the Swan case is far-reaching and even though it has been quoted literally, Hofmann v. La Fontaine, D.C.Wyo., 16 F.Supp. 748, 750, we think the true purport of the holding is the paraphrase found in 5 American Digest, Century Edition, Attachment § 871, p. 1006:

"A voluntary conveyance of property by a debtor on the verge of bankruptcy raises a presumption of an intention to defraud creditors, and, unless the presumption is satisfactorily rebutted by the grantors, the conveyance will be ground for an attachment."

The court in the Swan case discussed at some length the serious financial condition of the defendants prior to the transfers, and this undoubtedly influenced the statement made.

The lack of uniformity in attachment-affidavit requirements, Annotation, 8 A.L.R.2d 578, is unimportant in this jurisdiction since this court, interpreting the predecessor of § 1–226, subdivision 8, has held a statement in the words employed by the statute to be initially sufficient. First Nat. Bank of Cheyenne v. Swan, supra, 23 P. at 744. However, as we have above noted our cases are clear that an additional burden of proof rests upon plaintiff when the grounds for attachment are positively denied by the defendant in the affidavit in support of the motion to discharge. In Guaranty State Bank of Sisseton v. Varland, 49 S.D. 336, 207 N.W. 152, it was held that under such circumstances the intent to cheat, defraud, and delay the plaintiff-creditor must exist as a fact. Certainly, there must be a showing of some circumstance other than a mere voluntary transfer since that alone might be consistent with many facts indicating the transfer to be without the intent to defraud defendant's creditors. In any event, the present case does not fall within the Swan rule since here the opposing affidavits do not allege that the transfers were voluntary. We therefore examine plaintiff's counter-affidavits to determine whether or not they constituted substantial evidence to sustain the burden of proving that defendant had assigned, removed, or disposed of his property with intent to defraud creditors. Such affidavits were neither complete nor specific. As above mentioned, they contained no direct statement that the alleged conveyances were voluntary or that at the times thereof N. F. Smith was insolvent. Moreover, certain of affiant Vice's statements were hedged by the words "so far as affiant knows" and others were prefaced by "Smith * * * has given affiant reason to believe." Nevertheless, the trial court had before it the positive statements that N. F. Smith had transferred certain of his property and had said that he had it "fixed" so that creditors could not "get at him" if they ever "closed in." Under such circumstances, there was no abuse of discretion in overruling the defendants' motion to dissolve the attachment. This disposition of the case makes unnecessary any reference to matters concerning attachment upon the ground stated in subdivision 9 of § 1–226.

Affirmed.