FIRST STATE BANK OF WHEATLAND (formerly American Bank of Wheatland), and American National Bank of Laramie, Appellants (Plaintiffs),

v.

AMERICAN NATIONAL BANK (Cheyenne), and Does 1 to 5, inclusive, Appellees (Defendants).

No. 90–160.

Supreme Court of Wyoming.

April 11, 1991.

John E. Stanfield of Smith, Stanfield & Scott, Laramie, and John B. Speight, Hathaway, Speight, Kunz, Trautwein & Barrett, Cheyenne, for appellants.

David H. Carmichael, Burgess, Davis, Carmichael & Cannon, Cheyenne, and Anthony T. Wendtland, Burgess, Davis, Carmichael & Cannon, Sheridan, for appellees.

Before THOMAS, CARDINE and GOLDEN, JJ., and RAPER and BROWN, JJ., Retired.

RAPER, Justice, Retired.

Appellants sued appellee claiming dishonesty, misrepresentation, fraud, abuse of good faith and fair dealing in loan participation arrangements. The trial judge granted summary judgment to appellee.

The appellants have created what they consider the issues in what appears to be an attempt to obtain our attention in a melodramatic way:

1. Is dishonesty within the banking industry acceptable?

2. Do banks have a right to be dishonest—so long as they only cheat or defraud other banks?

3. In view of the Rule 56 evidence demonstrating its many misrepresentations as well as the facts which the Cheyenne Bank unquestionably concealed— was its summary judgment proper in this case?

4. Should the Cheyenne Bank be allowed to evade all responsibility for its actions through the ruse of comparing its own fraudulent conduct with conduct on the part of the Plaintiffs which, at most, was merely inadvertent or negligent?

5. Despite the unlimited powers it supposedly reserved under the participation contract—a document it alone created and filled out—was the Cheyenne Bank nevertheless obligated to exercise good faith and deal fairly with the participants when exercising those powers?

Appellee rephrases the issues claimed by appellants in a more conservative, judicious fashion:

1. Was Appellee entitled to Summary Judgment on Appellants' claims of fraud because no genuine issue of material fact existed concerning the element of justifiable reliance?

2. Was Appellee entitled to Summary Judgment on Appellants' claims of negligence because the element of "duty" was lacking?

3. Was Appellee entitled to Summary Judgment on Appellants' claims of breach of fiduciary duty because no fiduciary duty existed as a matter of law?

4. Was Appellee entitled to Summary Judgment on Appellants' claims that Appellee did not act in good faith or that Appellee committed the tort of "outrage"?

We will affirm the district court.

The facts are somewhat simple and lack the sinister view taken by appellants. Appellee loaned $800,000 to a Shirley L. Brown and then took from each of eight banks, including appellants, a certificate of participation in the sum of $100,000. Each participant, including appellants, signed and accepted a certificate of participation containing the following language:

Forwarding Bank [American National Bank, Cheyenne], by issuing this certificate, makes no representation of warranty as to the collectibility of the loan or the validity of any lien, collateral or instrument taken in connection therewith, nor with respect to any representations, warranties, or statements made by said borrower. (Bracketed material supplied.)

Appellee loaned an additional $600,000 to Shirley Brown several months later. Interest was paid currently on both promissory notes and both were renewed with a due date in November 1985. In November, the $800,000 loan and the $600,000 were combined into one loan totaling $1.4 million. Additional security was taken. Appellants participated and the same form of certificate of participation was executed by each of appellants and each contained the same language quoted above.

Appellants' officers, signatory to the certificates, admitted that bankers of reasonable and ordinary care would read loan documents, such as the certificates they executed, before signing them. Appellants' expert witnesses testified in their depositions that bankers, being sophisticated business persons, are charged with a duty to carefully read loan documents and that participant banks have an affirmative and independent duty to conduct credit analysis of any loan they consider participating in. Appellee furnished all financial information provided by Shirley Brown to appellants and it is acknowledged by appellants that they received such information prior to their execution of the $1.4 million loan certificate of participation.

Shirley L. Brown defaulted on the $1.4 million loan.

Appellee calls our attention to *TZ Land & Cattle Co. v. Condict,* 795 P.2d 1204, 1208 (Wyo.1990) (quoting *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704, 710 (Wyo.1987)) wherein is set out our standard of review of a summary judgment:

> "A motion for summary judgment places an initial burden on the movant to make a prima facie showing that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. Rule 56(c), Wyoming Rules of Civil Procedure. Once a prima facie showing is made, the burden shifts to the party opposing the motion to present specific facts showing that a genuine issue of material fact does exist. *England v. Simmons,* Wyo., 728 P.2d 1137, 1140–1141 (1986). We analyze challenges to a grant of summary judgment by reviewing the record in a light most favorable to the party opposing the motion giving him all favorable inferences that can be drawn from the facts. Id. Conclusory statements or mere opinions are insufficient, however, to satisfy an opposing party's burden. *Jones Land & Livestock Co. v. Federal Land Bank of Omaha,* Wyo., 733 P.2d 258, 263 (1987)."

Evidence opposing a summary judgment that is conclusory or speculative is insufficient to demonstrate that a material fact exists, and the trial court has no duty to anticipate possible proof. *Nelson v. Crimson Enterprises, Inc.,* 777 P.2d 73 (Wyo.1989).

Appellants attempt to parlay unfavorable facts into what facts they would like them to be. In this case, that would be a gigantic jump only possible through a purely speculative process which we do not accept.

 It is obvious that appellants did not read the unambiguous language of the participation certificate or, if they did, paid it no attention. This court does not reward such neglect. A person signing a contract cannot avoid it on the ground that he did not read it. *Sturman v. First National Bank,* 729 P.2d 667 (Wyo.1986). One who signs a contract generally cannot avoid it on the ground that he did not attend to its terms, or did not read it, or that he took someone's word as to what it contained. *Laird v. Laird,* 597 P.2d 463 (Wyo.1979).

 But that is not all. Appellants are banks that now attempt to make something evil out of participation agreements. Appellants are national banks administered primarily by the Comptroller of Currency who publishes policy guidelines covering loan participation. A participation occurs when a bank makes a loan and then sells it entirely or in part to another bank. As revised in 1984, in Section 60,799 of the OCC Guidelines, it is set out that the purchase and sale of loans and participation in loans are established banking practices but the associated risk must be controlled. It is provided in such Guideline that to make a prudent credit decision, a purchaser must conduct an independent credit analysis to satisfy itself that a loan participation is a credit which it would make directly. The acceptance by a purchaser of a favorable analysis of loan issued by the seller does *not* satisfy the need to conduct an independent credit analysis. There is no evidence that such independent analysis was made by appellants.

 The appellants can only blame themselves for any loss they may have incurred in failure to read the clear terms of the participation certificate and it appears they also failed to read the OCC Guidelines. They were plainly steered by imprudent bankers as herein defined.

This was an ideal case for the district court to grant summary judgment to the appellee.

Affirmed.